**This order is SIGNED.**



**Dated: March 26, 2019**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**



*sip*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Case No.: 18-28535 |
| MATTHEW JAMES WINTERS, | Chapter 7 |
| Debtor. | Honorable William T. Thurman |

**MEMORANDUM DECISION**
**REGARDING DEBTOR'S MOTION TO STAY**

### INTRODUCTION

The matter before the Court is the *Amended Motion for Stay of Order Terminating the Automatic Stay in Favor of PennyMac Pending Appeal*, filed by the Debtor, Matthew James Winters, on February 26, 2019 (the "Motion to Stay").[1]  PennyMac Loan Services, LLC ("PennyMac") objects to the Motion to Stay and filed its *Opposition to Motion for Stay of Order Pending Appeal* on February 27, 2019 ("PennyMac's Opposition").[2]

On March 8, 2019, the Court conducted a hearing on the Motion to Stay.  The Debtor appeared pro se, and Alan M. Hurst appeared for PennyMac.  At the hearing, after review of the pleadings and other court papers filed, and based upon the oral arguments made by the parties,

---

[1]    Case No. 18-28535, Docket No. 66.  All references to the Docket will be to the main bankruptcy case, which is Case No. 18-28535, unless otherwise specified.

[2]    Docket No. 70.

the Court issued an oral ruling, denying the Motion to Stay.  The Court reserved the right to supplement its oral ruling with a written memorandum decision and does so now; the following Memorandum Decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014(c) and 7052.[3]

## I.  FACTUAL AND PROCEDURAL HISTORY

A brief history is appropriate here to contextualize the Motion to Stay.  On November 14, 2018, the Debtor filed for protection under chapter 7 of the Bankruptcy Code[4].[5]  Upon the filing of the petition, the automatic stay of § 362(a), which "provides for a broad stay of litigation, lien enforcement and other actions, judicial or otherwise, that are attempts to enforce or collect prepetition claims,"[6] went into effect by operation of law.

In his schedules, which were filed on December 12, 2018, the Debtor disclosed his interest in real property located at 8084 Partridge Run Way, West Jordan, UT (the "Debtor's Home").  He indicated that the property and his interest in it, as he was the sole owner, were worth $340,000.[7]

On Schedule D, the Debtor indicated that several entities had claims secured by this real property; specifically, the Debtor scheduled the following secured claims:[8]

| Creditor | Amount of Claim |
|---|---|
| American Express | $20,907.54 |
| Internal Revenue Service (IRS) | $71,800 |
| Nation JACL Credit Union | $12,894.04 |

---

[3]       Any of the findings of fact herein are also deemed to be conclusions of law, and any conclusions of law herein are also deemed to be findings of fact, and they shall be equally binding as both.
[4]       All references to the "Bankruptcy Code" and statutory references are to title 11 of the United States Code unless otherwise indicated.
[5]       Chapter 7 Voluntary Petition, Docket No. 1.
[6]       3 Collier on Bankruptcy ¶ 362.01 (Richard Levin & Henry J. Sommer eds., 16th ed. 2018).
[7]       Schedule A/B, Docket No. 18, pg. 3.
[8]       Schedule D, Docket No. 18, pgs. 25–26.

| PennyMac | $323,351.54 |

The Debtor designated all these claims as disputed.[9]

Further, regarding these claims, the Court notes that Debtor moved on December 21, 2018, to avoid American Express's lien.[10]  The Court conducted a hearing on that motion and granted it on January 23, 2019.[11]

Additionally, the Debtor has commenced an adversary proceeding in this Court against PennyMac and the IRS to obtain, among other relief, declaratory relief that the IRS's lien is void ab initio.[12]  That proceeding is pending and no decision has been rendered.

On January 3, 2019, PennyMac filed its *Motion to Terminate Automatic Stay as to PennyMac Loan Services, LLC* ("PennyMac's MFR" or "MFR").[13]  In the MFR, this Court was asked to "terminate the automatic stay with respect to PennyMac's deed of trust and allow PennyMac to foreclose" on the Debtor's Home.[14]

 On January 31, 2019, the Court conducted a hearing on the MFR.  Appearances were noted on the record, which included the Debtor and PennyMac's counsel.  At the hearing, the Court granted PennyMac's MFR, and an order memorializing the Court's ruling was entered on February 14, 2019.[15]

Following the Court's entry of the order, on February 15, 2019, the Debtor filed a *Notice of Appeal and Statement of Election*, in which the Debtor elected to appeal this Court's decision

---

[9]        Schedule D, Docket No. 18, pgs. 25–26.
[10]       Motion for Avoidance of Liens, Docket No. 19.
[11]       Order Granting § 522(f) Motion, Docket No. 46.
[12]       Compl., Docket No. 1 in Case No. 19-02006, at pg. 6.
[13]       MFR, Docket No. 22.
[14]       MFR, Docket No. 22, at pg. 4.
[15]       Order Granting MFR, Docket No. 54.

to the Tenth Circuit Bankruptcy Appellate Panel (the "BAP").[16]  Subsequently, as the Court

stated previously, the Debtor filed the Motion to Stay on February 26, 2019.

## II.  JURISDICTION, VENUE, AND NOTICE

The jurisdiction of this Court is proper under 28 U.S.C. § 1334.  This is a core proceeding

within the meaning of 28 U.S.C. § 157(b)(2)(A), and this Court may enter a final order.  Venue

is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.

The hearing on the Motion to Stay was held on an expedited basis at the Debtor's

request.[17]  No objections were raised to the shortening of the noticing period, and the Court finds

that notice of the hearing on the Motion to Stay is adequate in all respects.

## III.  DISCUSSION

Federal Rule of Bankruptcy Procedure 8007(a)(1)(A) permits a bankruptcy court to stay

its own orders pending appeal.  That being said, "[a] stay is not a matter of right, even if

irreparable injury might otherwise result. It is instead 'an exercise of judicial discretion,' and

'[t]he propriety of its issue is dependent upon the circumstances of the particular case.'"[18]

In qualifying for a stay pending appeal, "the party requesting a stay bears the burden of

showing that the circumstances justify an exercise of that discretion."[19]  Courts have long relied

upon a four-factor test to determine whether the moving party has met its burden.  These factors

are:

> (1) whether the stay applicant has made a strong showing that he is likely to
> succeed on the merits; (2) whether the applicant will be irreparably injured absent
> a stay; (3) whether issuance of the stay will substantially injure the other parties
> interested in the proceeding; and (4) where the public interest lies.[20]

---

[16]    Notice, Docket No. 56.
[17]    Order Granting Expedited Hearing, Docket No. 71.
[18]    *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672–73
(1926)).
[19]    *Nken*, 556 U.S. at 433–34 (citations omitted).
[20]    *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Lang v. Lang (In re Lang)*, 305
B.R. 905, 911 (10th Cir. BAP 2004), *aff'd*, 414 F.3d 1191 (10th Cir. 2005) (same).

With regard to the four factors, the first two are considered the most critical.[21]  The Court will now consider each in turn.

**A.     Whether the Stay Applicant Has Made a Strong Showing That He is Likely to Succeed on the Merits**

Under the first factor, the moving party—the Debtor in this case—must make a strong showing that he is likely to succeed on the merits.  "[M]ore than a mere 'possibility' of relief is required," i.e., "[i]t is not enough that the chance of success on the merits be better than negligible."[22]

While the ultimate resolution of the appeal lies in the hands of the BAP, this Court must nevertheless consider whether the Debtor is likely to be successful in his endeavor.  The Debtor seeks to overturn this Court's order granting PennyMac's MFR.  This challenge requires the Debtor to show that this Court abused its discretion in granting PennyMac's MFR.[23]  "Under the abuse of discretion standard: a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[24]

With the Debtor's task in mind, this Court will now review its previous determination that grounds existed to lift the automatic stay with respect to PennyMac's interest in the Debtor's Home.

PennyMac sought relief from the automatic stay under both § 362(d)(1) and (d)(2).

**1.  Relief from Stay Under § 362(d)(1)**

---

[21]     *Nken*, 556 U.S. at 434.
[22]     *Id.* (internal citations and quotations omitted).
[23]     *See In re Miller v. Deutsche Bank Nat'l Trust Co.*, 666 F.3d 1255, 1260 (10th Cir. 2012) ("The bankruptcy court's decision whether to grant relief from stay is reviewed for an abuse of discretion.").
[24]     *G & B Aircraft Mgmt. v. Smoot (In re Utah Aircraft All.)*, 342 B.R. 327, 331 (10th Cir. BAP 2006) (internal quotations and citations omitted).

Section 362(d)(1) instructs a court to "grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause." The term "cause" is not defined in the Bankruptcy Code; as such, "discretionary relief from the stay must be determined on a case by case basis."[25]

In addition to pre-petition delinquency, PennyMac asserted that the Debtor failed to make two post-petition payments, which came due on December 1, 2018, and January 1, 2019. In its MFR, PennyMac provided loan statements showing the amounts owing.[26] In response, the Debtor denied the assertion that post-petition payments were delinquent but provided no evidence, such as bank statements, that would support his denial; moreover, the Debtor contended that post-petition delinquency does not constitute cause to the lift the stay.[27] However, courts have found that "failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay."[28]

According to § 362(g)(2), the Debtor bore the burden to prove that cause did not exist to lift the automatic stay. But he did not do so. Thus, given the Debtor's failure in this respect and PennyMac's showing, the Court found that cause did exist to grant relief under § 362(d)(1).[29]

## 2. Relief from Stay Under § 362(d)(2)

Next, § 362(d)(2) instructs a court to "grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . if-- (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." The Debtor, having filed a petition under chapter 7 of the Bankruptcy Code, did

---

[25]     *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987) (quoting *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986)).
[26]     MFR Exs. H and I, Docket No. 22.
[27]     Debtor's Response to MFR, Docket No. 31, pg. 2, ¶ 5; pgs. 7–8.
[28]     *E.g.*, *In re Jespersen,* No. BR 14-26216, 2015 WL 237313, at *2 (Bankr. D. Utah Jan. 16, 2015) *(citing In re Fennell*, 495 B.R. 232, 239 (Bankr. E.D.N.Y. 2012)).
[29]     Although not explicitly discussed at the hearing, this issue of "cause" under § 362(d)(1) was briefed by the parties and submitted on their papers.

not seek to reorganize.[30]  Thus, the only question was one of equity in the Debtor's Home;
PennyMac asserted that the Debtor had none.

"A debtor 'has no equity in property . . . when the debts secured by liens on the property
exceed the value of the property.'"[31]  Under § 362(g)(1), PennyMac had the burden of proof on
the issue of equity.

As noted earlier, the Debtor disputes all the claims secured by his home.  In response to
the MFR, the Debtor asserted, among other theories, that he had claims against PennyMac that
greatly outweighed its claim against his home.[32]  The Debtor believed that the IRS's lien was
void because of the IRS's alleged violation of due process.[33]  American Express's lien has been
found to be avoidable, and the Debtor asserted that the lien of Discover Bank was recorded
erroneously and has since been removed.[34]

Beyond the disputes over the individual claims, the Debtor expressed a concern that any
determination of equity should be reserved until after final adjudication of the claim disputes and
his adversary proceeding against PennyMac and the IRS.[35]  But this approach is simply not
consistent with the Bankruptcy Code.  As the Tenth Circuit BAP explained:

> Because the statute requires bankruptcy courts to rule quickly on stay motions, a
> relief from stay proceeding is by its nature a cursory or summary proceeding.
> . . . .
>           . . . [A]t all hearings on relief from the stay, the only issue will be the
> claim of the creditor and the lack of adequate protection or existence of other
> cause for relief from the stay. This hearing will not be the appropriate time at
> which to bring in other issues, such as counterclaims against the creditor on
> largely unrelated matters. Those counterclaims are not to be handled in the

---

[30]     *See In re J & M Salupo Dev. Co., Inc.*, 388 B.R. 809, 812–13 (Bankr. N.D. Ohio 2008) ("[T]he property [in a Chapter 7 case] is not necessary to a reorganization because the estate's assets are being liquidated in accordance with Chapter 7 provisions.").

[31]     *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 875 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 497 (10th Cir.2011) (ellipsis in original).

[32]     Debtor's Response to MFR, Docket No. 31, pg. 3.

[33]     Debtor's Response to MFR, Docket No. 31, pg. 3, n.1.

[34]     Debtor's Response to MFR, Docket No. 31, pg. 2, n.2.

[35]     Debtor's Response to MFR, Docket No. 31, pg. 6.

summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustees to recover property of the estate or to object to the allowance of a claim.

. . . However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded is a determination of such collateral claims on the merits at the hearing.

At a stay hearing, the court merely determines whether the movant has a colorable claim, i.e., a facially valid security interest. It then should consider whether the objector has raised a colorable defense that, not merely offsets the movant's claim, but actually would defeat the movant's claim. In this context, the bankruptcy court limits its consideration of defenses to those that strike at the heart of the creditor's lien or that bear on the debtor's equity in the property.[36]

This Court, at the MFR hearing, considered the Debtor's defenses to the claims but found none that would actually defeat the current claims. Accordingly, even using the Debtor's higher valuation and excluding American Express's and Discover Bank's liens, the Debtor has negative equity of approximately $17,899.21. Thus, the Court also found cause existed under § 362(d)(2) to lift the stay in favor of PennyMac. The equity calculation was as follows:

| Creditor | Debtor's Scheduled Amount | Creditor's Valuation/Amount | Amount Included in Equity Calculation |
|---|---|---|---|
| Debtor's Home | $340,000 | $333,000[37] | $340,000 |
| American Express | $20,907.54 | $20,907.54[38] | $0[39] |
| Discover Bank | $0 | $4,780.26[40] | $0[41] |
| Internal Revenue Service (IRS) | $71,800 | $34,547.67[42] | $34,547.67 |
| Nation JACL Credit | $12,894.04 ($0)[43] | $0 | $0 |

---

[36]    *In re Utah Aircraft All.*, 342 B.R. at 331 (internal quotations and citations omitted) (last ellipsis in original).

[37]    PennyMac submitted an appraisal, which was conducted approximately five months before the petition. MFR Ex. D, Docket No. 22.

[38]    MFR Ex. L, Docket No. 22.

[39]    Amex's lien was found to be avoidable; however, the avoidance would only be effective upon the Debtor's discharge, which occurred after the hearing on the MFR. Order Granting § 522(f) Motion, Docket No. 46; Order of Discharge, Docket No. 62. For the purposes of the MFR, the Court excluded this lien from the calculation.

[40]    MFR Ex. K, Docket No. 22.

[41]    While PennyMac provided recording information for the lien of Discover Bank, the Debtor contended that the lien has been removed. For the purposes of the MFR, the Court resolved this dispute in favor of the Debtor.

[42]    MFR Ex. J, Docket No. 22.

[43]    At the January 23, 2019 hearing on the Debtor's Motion for Avoidance of Liens, the Debtor represented to the Court that National JACL Credit Union did not, in fact, have a lien against his home, and no lien recording information was provided.

| Union | | | |
|---|---|---|---|
| PennyMac | $323,351.54 | $323,351.54[44] | $323,351.54 |

The BAP may reverse this Court, and this Court will respect any decision handed down by the panel, but this Court just does not see that the Debtor has made a compelling showing of prevailing on this appeal.  Accordingly, the first factor weighs against granting the Motion to Stay.

**B.      Whether the Applicant Will be Irreparably Injured Absent a Stay**

The second factor is whether the applicant will be irreparably injured absent a stay. "Irreparable harm must be neither remote nor speculative, but actual and imminent. An injury that may be fully remedied by monetary damages does not constitute irreparable harm."[45]

The Debtor contends that with the automatic stay no longer in place, PennyMac will be allowed to complete a non-judicial foreclosure proceeding within 30 days.  Thus, the Debtor would not only be harmed by the loss of his home, but also the Debtor's appeal might become moot upon completion of the foreclosure process.

On the other hand, PennyMac points out that the granting of its MFR only permits it to pursue its remedies consistent with non-bankruptcy law; granting relief from the automatic stay does not inevitably conclude that foreclosure would be consistent with applicable non-bankruptcy law.  Furthermore, the Debtor is not prevented from asserting any state-law defenses to foreclosure in his adversary proceeding or elsewhere.

This Court is persuaded that PennyMac's right to pursue state-law remedies—which may ultimately result in foreclosure—shows that the Debtor is likely to be injured.[46]  Moreover, the

---

[44]      MFR Ex. E, Docket No. 22.
[45]      *In re 473 W. End Realty Corp.*, 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014) (internal quotations and citations omitted).

loss of one's home and the displacement of the Debtor's family cannot be fully remedied monetarily.

Another aspect to assess is the mootness of the appeal if PennyMac were to foreclose on the Debtor's home; but this consideration is not universally recognized, as courts are split as to whether mootness, in and of itself, constitutes irreparable injury.[47]  This Court, however, does find that the potential for mootness must be considered when evaluating this second factor.

As such, the possibility that the Debtor's appeal to the BAP may become moot, along with the impending foreclosure proceeding, weighs in favor of granting the Motion to Stay.

**C.    Whether Issuance of the Stay will Substantially Injure the Other Parties Interested in the Proceeding**

The third factor is whether a stay pending appeal will substantially injure the other parties interested in the proceeding.  In other words, will PennyMac be harmed by a stay pending appeal?

The Debtor emphasized that damage, if any, to PennyMac is far outweighed by the damage he will suffer from a foreclosure.[48]  The Court observes, however, that at the time PennyMac filed its MFR, the Debtor had failed to make a number of payments under the mortgage agreement, amounting to a pre-petition delinquency of $44,540.46.[49]  While the Debtor disputes the number of payments missed, this Court can only consider the evidence before it and observes that the missed payments represent a substantial amount of time that has elapsed since the Debtor last made a payment.

---

[46]    *See Garcia v. Direct Fin. Servs. LLC (In re Garcia)*, 436 B.R. 825, 829 (Bankr. W.D. Va. 2010) (finding "some indication of irreparable harm" where relief from the automatic stay would allow a creditor to repossess the debtor's five vehicles resulting in "loss in income" for the Debtor").
[47]    *See Sunflower Racing v. Mid-Continent Racing & Gaming Co. (In re Sunflower Racing)*, 225 B.R. 225, 228 (D. Kan. 1998) (collecting cases).
[48]    Motion to Stay, Docket No. 66, pg. 4.
[49]    MFR Exs. F and G, Docket No. 22.

Although the Debtor encourages the Court to do so, this Court cannot ignore the injury that further non-payment without state law remedies would inflict upon PennyMac were the Court to grant the Motion to Stay.  PennyMac continues to suffer harm from the Debtor's possession of the property without compensation.[50]  Similarly, to further delay relief from the stay would prevent PennyMac from selling its collateral; the proceeds of which could be used to generate a return to PennyMac.[51]  Finally, given the value of the home and the outstanding balance of the mortgage, as this Court has already detailed, granting the Motion to Stay likely means additional expenses for PennyMac, such as interest charges, which may not be recoverable upon the sale of the Debtor's Home.[52]

Thus, the Court finds that the third factor weighs against granting the Motion to Stay.

## D.    Where the Public Interest Lies

The final factor requires the Court to consider public interest.  The Debtor avers that "[p]roceeding with termination of the automatic stay in the presence of numerous serious and constitutional issues is completely adverse to public policy."[53]

The Court is well aware of the gravity of the automatic stay, which is essential to the bankruptcy process.  In liquidation cases, such as the Debtor's pending chapter 7 case, the

---

[50]    *See In re Target Graphics, Inc.,* 372 B.R. 866, 876 (E.D. Tenn. 2007) (finding harm to a secured creditor where the debtor remained "in possession of the collateral" and the secured creditor was not "receiving any type of payment").

[51]    *See In re Farwell*, No. 14-10126, 2015 Bankr. LEXIS 4325, at *12–13 (Bankr. D. Md. Dec. 22, 2015) (finding harm to a secured creditor, in part, because a stay pending appeal would delay a foreclosure sale and thus deprive the creditor of the ability "to invest the proceeds of that sale, and obtain a return on the investment of those proceeds").

[52]    *See In re Connelly*, 195 B.R. 230, 235 (Bankr. W.D.N.Y. 1993) (finding harm to a secured creditor where the debtor's actions caused the "secured debt to increase substantially, not only by continuing interest accrual but by requiring [the secured creditor] to incur substantial and unnecessary additional expenses . . . , including attorneys' fees and publication costs, all in an attempt to enforce its lawful contractual rights").

[53]    Motion to Stay, Docket No. 66, pg. 5.

automatic stay "provides immediate relief for debtors in financial difficulty and protects the

trustee's ability to control the liquidation of property of the estate."[54]

Yet, the Debtor's own words give this Court pause as it considers this factor.  The Debtor

has stated that PennyMac has engaged in illegal activity, violated the automatic stay, and failed

to consider the proposed short sale in good faith.[55]  It seems as though the Debtor is attempting

to use the automatic stay to force PennyMac to reconsider the proposed short sale or some other

loan modification.  This is not the intended purpose of the stay: "the stay is a shield, not a sword

that should help the debtor deal with his bankruptcy for the benefit of himself and his

creditors."[56]  Correspondingly, courts have found that "public interest weighs in favor of denying

a stay pending appeal when there demonstrably is no valid basis under the Bankruptcy Code to

continue staying [a creditor's] right to proceed with a foreclosure sale."[57]  Moreover, when the

standards to stay an order pending appeal have not been met, as is the case here, "a stay pending

appeal would injure the interests of sound case management in the bankruptcy process, and as a

consequence, would also injure the public interest."[58]

Given the compelling arguments on both sides, the Court finds that this factor tips

slightly in favor of denying the motion or is, at best, neutral.

## CONCLUSION

In sum, the Court finds that the first factor does not support staying the order pending

appeal; the second factor does weigh in favor of staying the order pending appeal; the third factor

---

[54]     3 Collier on Bankruptcy ¶ 362.03[1] (Richard Levin & Henry J. Sommer eds., 16th ed. 2018).
[55]     Motion to Stay, Docket No. 66, pgs. 12–13.
[56]     *In re Scarborough-St. James Corp.*, 535 B.R. 60, 67 (Bankr. D. Del. 2015) (quoting *Sternberg v. Johnston*, 582 F.3d 1114 (9th Cir. 2009)).
[57]     *E.g.*, *In re Farwell*, No. 14-10126, 2015 Bankr. LEXIS 4325, at *13 (Bankr. D. Md. Dec. 22, 2015).
[58]     *See In re Taub*, No. 08-44210-ess, 2010 Bankr. LEXIS 3458, at *16 (Bankr. E.D.N.Y. Oct. 1, 2010).

speaks against staying the order pending appeal; and the fourth factor weighs slightly in favor of

denying the motion or is neutral.

      For the reasons provided, the Court is persuaded by the arguments of the objecting party

that the Debtor has not carried his burden.  Accordingly, the Motion to Stay is denied.

-------------------------------------------END OF DOCUMENT-------------------------------------------

## <u>DESIGNATION OF PARTIES TO RECEIVE NOTICE</u>

Service of the foregoing **MEMORANDUM DECISION REGARDING DEBTOR'S MOTION TO STAY** shall be served to the parties and in the manner designated below.

**By CM/ECF Notification:**

- Jennifer Y. Golden          jennifer.y.golden@usdoj.gov, western.taxcivil@usdoj.gov
- Mary M. Hunt tr            hunttrustee@dorsey.com, hunt.peggy@dorsey.com;
                             UT18@ecfcbis.com
- Alan Michael Hurst         alan.hurst@akerman.com, tracey.wayne@akerman.com
- Dean A. Stuart             dean@richardsandassociateslawoffice.com,
                             lynn@richardsandassociateslawoffice.com
- Jared Christopher Tingey   jared.tingey@westjordan.utah.gov
- United States Trustee      USTPRegion19.SK.ECF@usdoj.gov
- Tyler S. Wirick            ecfutb@aldridgepite.com, TWirick@ecf.courtdrive.com


**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Matthew James Winters
8084 Partridge Run Way
West Jordan, UT 84088